SPRINGFIELD v. STAMPER—214 S. W. (2d) 345.

Eastern Section.   July 14, 1948.

Petition for Certiorari denied by Supreme Court, Oct. 16, 1948.

Wagner & Wagner, or Chattanooga, for plaintiff in error.

Schoolfield & Graham, of Chattanooga, for defendant in error.

GOODMAN, J. This suit was commenced by forcible detainer warrant issuing from the Court of General Sessions of Hamilton County, Tennessee, the plaintiff (defendant-in-error) seeking possession of a tract of land situated in or near the town of Daisy, in the Third Civil District of Hamilton County. There was a judgment for the defendant (plaintiff-in-error) in the General Sessions Court and the plaintiff appealed to the Circuit Court, where the case was heard before the trial judge, without the intervention of a jury, and judgment was there entered in favor of the plaintiff and for the possession of the property described. Defendant's motion for a new trial having been overruled an appeal in the nature of a writ of error was prayed, granted and perfected to this Court.

The proof shows that title to the subject property devolves from one Mack Windham, the son of a slave, who died in December 1930. As was frequently the case in

the early days of the South, Mack received his surname from the Windham family who had owned his mother and father, and down through the years he remained in the same community in which he was born, acquired property and maintained a good relationship with his neighbors, both white and colored. He had no children but left his widow, Lizzie Windham, surviving. The latter died December 21, 1946. It is shown, without contradiction, that Mack had two brothers, John and Wilson, who predeceased him, leaving no children surviving; but the evidence is in conflict as to other relationships. Proof was adduced on behalf of the plaintiff to show that he also had two sisters, Sophia and Mamie Windham; that the former married a Condrey, and had three children born to her, neither of whom left issue surviving, and that they all predeceased Mack Windham; that Mamie married Starling Patterson, and had two children, one, a girl, who died before Mack, and the other a son, by the name of Floyd, the father of the plaintiff. The claim that Mack Windham had a sister, the grandmother of the plaintiff, or any sister for that matter, is disputed by the defendant. Several residents of the community in which Windham lived, long time acquaintances of the family, testified that they had never known or heard of the sisters or either of them.

The defendant, as one of the heirs of his mother, Frances Springfield, asserts the right of possession in approximately three acres of the premises here involved by virtue of a deed executed to the latter on the 2nd day of September, 1933, by Elizabeth (Lizzie) Windham, and by virtue of continuous possession thereof by the said Frances Springfield and her heirs since the date of said conveyance. Said defendant further asserts the right of possession to the entire tract here involved under

a written instrument of conveyance to him dated October 1, 1946, signed by the said Lizzie Windham and in form and context as follows:

"Oct. 1, 1946

"I Lizzie Windham Wife of Mack Windham, do hereby make my Will under no restraint or force. I Lizzie Windham do hereby sell cash in hand $1.00 do transfer & convey unto Charlie S. Springfield and the following real estate, Beginning on pine stump at the South East corner, McRee's fraction of land now occupied by A. C. Corner, and H. D. Winter's West line running thence South with said Winter's West line (14) rods to Mack Windham North East corner, thence said Windham North line (36) poles to a stake in the Igon ferry road, in the McRee fraction thence in a Easterly direction with said McRee South line (12) poles to beginning. For being loyal faithful & kind to me Taken care of me in my feeble condition, my old age pension being $13.20 not enough to support me, and having to be supported & clothing me. Taken the obligations of my doctor bills and medicine, His Wife nursing and waiting on me. He also agrees to take care of my Burial at death, I Lizzie Windham do willingly agree for Charlie S. Springfield & Wife to have and to hold my real estate at my death. To repay him and Wife, for their kindness, and financial support until death.

Lizzie Windham
X Her mark
Thelma Springfield
Jed Stewart
C. E. Shattuck
J. H. Henderson
W. R. Miller"

Our consideration is first directed to those assignments of error which relate to the form of action pursued by the plaintiff and the basis therefor as reflected by the pleadings and proof, it being insisted on behalf of the defendant that unlawful detainer does not lie under the facts of the case.

Section 9253 of the Code of Tennessee, pertaining to forcible entry and detainer actions, provides, "The warrant need not set forth the particular species of entry or detainer, and any defect therein, or in any of the proceedings, may be amended as other process and pleadings in court." In Westmoreland v. Farmer, 7 Tenn. App. 385, the Court said, ". . . We think that any of the species of the actions of entry of detainer may be prosecuted under the one form of the warrant set out by statute, Shannon's Code, 5098, but if the party does not follow the form prescribed, which is comprehensive, but brings one of the particular actions of entry or detainer defined by the statute, then by all the rules of pleading he is confined to that particular action and must make out his case." Code Section 9247 provides "Unlawful detainer.—Unlawful detainer is where the defendant enters by contract, either as tenant or as assignee of a tenant, or as personal representative of a tenant, or as subtenant, or by collusion with a tenant, and, in either case, willfully and without force, holds over the possession from the landlord, or the assignee of the remainder or reversion." The warrant issued in this case fails to charge unlawful entry but does include the word "forcible". On the other hand, the proof is confined to the theory of entry by contract and unlawful detainer without force. We think it manifest that the plaintiff below proceeded under and is confined to an action of

unlawful detainer; hence, entry under contract is of the gravamen of the action.

The case of Shepperson v. Burnette, 116 Tenn. 117, 92 S. W. 762, was an unlawful detainer action brought by the children of Jane and Alfred Sutton against the widow of Alfred Sutton's grantee. The land involved had been conveyed to Jane Sutton by Silas Pratt and wife and, upon the former's death, her husband, Alfred Sutton, became a tenant by the curtesy. The court in holding that such an action would not lie, referring to the definition thereof as aforequoted (Code Sec. 9247), said, "It is perceived that one essential element of the definition is that the defendant or the one under whom he claims must have entered by contract. In the present case it appears, as already stated, that Alfred Sutton was tenant by the curtesy. Flem Burnette took such rights as he had, and no more. The same is true of the widow of Burnette, the present defendant. Tenancy by the curtesy is an estate for life created by the act of the law. The law vests the estate in the husband immediately upon the death of the wife without entry. 4 Kent, Comm., Marg. pp. 27, 29. So it appears that neither the estate was created nor was possession secured by contract. Hence an action of unlawful detainer could not lie by the remaindermen against an assignee of the tenant by the curtesy holding over after the expiration of that estate."

We conceive the homestead and dower rights of Lizzie Windham, although never set apart or assigned, to have been analogous, in the sense here considered, to tenancy by the curtesy.

"In Tennessee a homestead of the value of one thousand dollars in real estate and improvements, if any thereon, is allowed to each head of a family. It is exempt

from sale under legal process during the life of such head of the family, and upon his death it shall go to his widow during her natural life, with the products thereof, for her own use and benefit, and that of her family who may reside with her; and upon her death it shall go to the minor children of the deceased husband free from the debts of the father, mother, or said children; and upon the death of said minor child or children, or their arrival at age, the same may be sold, and the proceeds distributed amongst all the heirs-at-law of the deceased head of the family.''

''Dower is a widow's interest in her deceased husband's real estate. It consists of one-third of all the real estate of which he died seized and possessed, whether it was legal or equitable estate. She holds it for her life, and then it reverts to the heir,'' Caruthers History of a Lawsuit, Secs. 44, 51; Code of Tennessee, Secs. 7719-7735, 8351-8379.

■ In Jarman v. Jarman's Heirs, 72 Tenn. 671, the Court said, ''By our law the homestead vests in the husband and wife jointly, and is a life estate; upon the death of either it vests in the survivor.''

Code Section 8353 provides that a widow's dower ''shall enure to her own proper use, benefit, and behoof, for and during the term of her natural life.'' Acts 1784, April Ses. Ch. 22, Sec. 8.

■ ''While the widow is entitled to only one-third interest in the land of her deceased husband as dower, that right to one-third hovers over the whole land as a right in her, and an encumbrance or charge on the land, until it is assigned, and the dower right does not become a vested one nor ripen into a free hold estate until dower is set apart by assignment by metes and bounds. A dower is not as estate, but only a right which attaches to the

whole land before assignment; but after assignment it is an interest or estate for life, which is confined to the metes and bounds assigned as dower. Thompson v. Stacy, 10 Yerg. 493 [18 Tenn. 493]; Whyte v. Mayor, etc., [of Town of Nashville], 2 Swan. 364 [32 Tenn. 364]; Latta v. Brown, 12 Pickle 343, 356 [96 Tenn. 343, 356], 34 S. W. 417, [31 L. R. A. 840].

"So, the homestead right hovers over the whole land until it is assigned by metes and bounds or some equivalent act." Briscoe v. Vaughn, 103 Tenn. 308, 52 S. W. 1068, 1069.

"The widow's dower is not a purchase from her husband, but is an encumbrance upon the title of the heir at law. It originates with the marriage and is consummated by the death of the husband." Kitts v. Kitts, 136 Tenn. 314, 189 S. W. 375, 376.

In Smith v. Whitsett, Tenn. Ch. App., 36 S. W. 1048, 1050, the Court said, "Prior to the assignment of dower, there is no privity between the husband and wife as to the husband's lands, so far as such privity is based upon the right of dower. The right of dower confers no title to any part of the husband's land after his death until assignment of dower is made." See Marr's Heirs v. Gilliam, 41 Tenn. 488.

■ We discern no material difference, in so far as the heirs' choice of remedy is concerned, between the case here presented and that which was before the Court in Shepperson v. Burnette, supra. Lizzie Windham's interest in her husband's lands, or a portion thereof, never matured to the dignity of a life estate, but, even if it had, she could not by contract, deed or assignment create such an entry on the premises by the defendant as would, upon a holding over, give rise to an unlawful detainer action by a remainderman. The Court, in Shepperson v.

Burnette, supra, defines the tenancy contemplated in unlawful detainer actions, thus, "Again, it is manifest from the language of the section which we have quoted that it applies alone to one who occupies the relation of tenant, or the assignee of a tenant, or the personal representative of a tenant, or a subtenant, or one holding by collusion with the tenant, and the word 'tenant' here has reference to the relation of landlord and tenant, and not the more remote meaning which the word 'tenant' bears as used in the expression 'tenant by the curtesy,' 'tenant in common,' and the like."

Now it may be reasoned that in the instant case the contract by which entry was effected was not the instrument of conveyance to defendant executed by Lizzie Windham, but rather the consideration therefor;—that is to say, that defendant moved upon the premises in the year 1943, under the agreement and for the purpose of caring for the aged widow of Mack Windham. But we are of the opinion that this does not alter the principle as afore annunciated. His possession was necessarily limited to the estate of the widow. Whether vested by assignment or inchoate, no such tenancy existed or could be transferred or assigned as is contemplated as basis for an action in unlawful detainer.

We have here treated the tenancy of Lizzie Windham as predicated upon unassigned homestead and dower, and the interest of the plaintiff, Eva P. Stamper, as that of a remainderman, but solely for the purpose of the present adjudication, and not as a determination of the ultimate question of the status of either with relationship to the property involved.

For the reasons aforestated, we conclude the trial court to have been in error; hence it is unnecessary to reach a determination with respect to the other assignments.

The judgment of the lower court is accordingly reversed and the suit dismissed. The costs of the cause, including the costs accrued upon appeal, are adjudged against the defendant-in-error.